In the

# United States Court of Appeals

## For the Seventh Circuit

No. 03-2189

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VINCENT MCCAFFREY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02-CR-591—**John W. Darrah**, *Judge.*

ARGUED SEPTEMBER 13, 2005—DECIDED FEBRUARY 13, 2006

Before BAUER, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Vincent McCaffrey, a former priest, pled guilty to receiving and possessing child pornography that was transported in interstate commerce. After adding numerous enhancements, the court imposed a sentence of 240 months. McCaffrey, challenging the sentence, claims that the district court improperly double-counted the same behavior to justify two separate upward departures. We disagree. We also find that the district court properly based his sentence on the trafficking guideline, U.S.S.G. § 2G2.2, rather than a simple possession guideline, U.S.S.G. § 2G2.4. Finally, we find that the district court

committed no error under *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

## I. BACKGROUND

Vincent McCaffrey became a Catholic priest in 1978. During his assignments as the priest in charge of youth groups, choirs, and altar boys in a number of parishes, he sexually molested many of the young boys under his supervision on hundreds of separate occasions. During his career, McCaffrey received treatment for alcoholism and for psychiatric problems, including his sexual attraction to adolescents. While the treatment for alcoholism was successful, his sexual disorder persisted. The Archdiocese required McCaffrey to cease clerical activity in 1991, and he formally resigned from the priesthood in 1993. He has held various jobs since that time, most recently as an insurance agent and as manager of a gas station.

Beginning in 1999, McCaffrey purchased memberships to websites from which he downloaded child pornography. On June 11, 2002, customs agents searched McCaffrey's home and discovered numerous prints, computer files, and disks containing images of child pornography. Several of the images depicted minors under twelve and some depicted sado-masochistic conduct. On August 6, 2002, the government filed an information charging McCaffrey with one count of receiving an image of child pornography that was transported in interstate commerce in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count I) and one count of possessing images of child pornography that were transported in interstate commerce in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count II). On September 12, 2002, McCaffrey pled guilty to both counts without a plea agreement.

In the presentence report, the probation officer recommended a base offense level of 17, pursuant to U.S.S.G.

§ 2G2.2. She also recommended the following enhance-
ments: two levels for possessing pictures of a prepubes-
cent minor; four levels for possessing images depicting
sadistic or masochistic conduct; two levels for using a
computer in the commission of the offense; and five
levels for engaging in a pattern of activity involving the
sexual abuse or exploitation of a minor. The report recom-
mended that McCaffrey be placed in criminal history
category one.[1]

The government filed two motions for upward depar-
ture. In the first, it argued for a five-level enhancement
for McCaffrey's pattern of sexual abuse. In the second, it
sought a five-level increase in McCaffrey's criminal history
category because category one understated the serious-
ness of his past criminal conduct and failed to reflect
accurately his likelihood of recidivism. In support of its
sentencing position, the government filed extensive docu-
mentation related to McCaffrey's history of sexually
abusing minors, including settlement agreements and
witness statements. McCaffrey opposed the pattern en-
hancement on the ground that the instances of molestation
were unrelated to the charged conduct. He also opposed the
increase in his criminal history category, arguing that he
was unlikely to re-offend because he was no longer a priest
and had not committed abuse for several years.

On December 9, 2002, the court held an evidentiary
hearing pursuant to the government's motions. Witnesses
at the hearing included five of McCaffrey's victims, each
of whom gave wrenching testimony that McCaffrey had
betrayed, manipulated, and abused them, negatively
impacting their emotional health and their faith in God.

---

[1]  McCaffrey has never been convicted of any crime, and has never
been charged with any crime stemming from the abuse
he committed during his tenure as a priest.

Some victims also testified that McCaffrey had used some form of force in the course of the abuse, such as pulling them toward him in bed, holding them under water, or chasing them with his car. One victim testified that McCaffrey took nude photographs of him. The court also heard from McCaffrey's niece, who recalled seeing her uncle invite boys into his bed, and from McCaffrey's former psychiatrist, Dr. Kelly, who treated McCaffrey with medication (including hormones to reduce his sex drive) and psychotherapy. Dr. Kelly felt that McCaffrey sometimes denied, minimized, or rationalized his behaviors rather than committing himself fully to treatment. Dr. Kelly opined that McCaffrey was at risk of committing further acts if not actively engaged in treatment. McCaffrey testified that during his time as a priest, he had had about 100 separate sexual contacts with twelve to fourteen minor boys, and that he had hundreds of sexual contacts with perhaps 25 other children at other times in his life. McCaffrey denied that he had ever penetrated a child, used force against a child, or taken sexual pictures of a child. Finally, McCaffrey apologized to his victims and promised to pray for them every day for the rest of his life.

Following the hearing, the court issued an order granting the government's motions for a 5-level enhancement for a pattern of sexual abuse and for a 5-level increase in McCaffrey's criminal history category. The court rejected McCaffrey's objections to the enhancements, noting that the application note to § 2G2.2 makes clear that the pattern enhancement applies irrespective of whether the earlier abuse was related to the instant offense, and finding that both under-representation of criminal history and likelihood of recidivism justified the increase in McCaffrey's criminal history category. *See United States v. McCaffrey*, No. 02 CR 591 (N.D. Ill. Jan. 30, 2003) (order granting motions for upward departure). The court further found that this was not impermissible double-counting of the same conduct,

since McCaffrey fell within the Application Note to Section 2G2.2 allowing double-counting under some circumstances. *Id.* At the sentencing hearing, the court orally granted each of the government's earlier motions for upward departures and otherwise accepted the recommendations in the presentencing report. The court also granted the government's post-hearing motion for a two-level enhancement for obstruction of justice because McCaffrey lied to the court about never using force against his victims. This resulted in an offense level of 37, with a guidelines range of 360 months to life. However, as this was in excess of the statutory maximum for McCaffrey's offenses of conviction, the court ordered McCaffrey to serve the maximum terms of 180 months imprisonment on Count I and 60 months on Count II, to be consecutively served. This appeal followed.

## II. ANALYSIS

A. The District Court Did Not Engage in Improper "Double-Counting" When It Applied a Pattern Enhancement and an Increase in McCaffrey's Criminal History Level.

We review a district court's factual findings for clear error and its application of those facts to the guidelines *de novo*. *United States v. Turner*, 400 F.3d 491, 500 (7th Cir. 2005). Based on McCaffrey's admitted history of sexual abuse of minors, the district court imposed one upward departure under § 2G2.2(b)(4) for engaging in a pattern of child sexual abuse and another under § 4A1.3 because the defendant's criminal history category of one did not adequately reflect the seriousness of the defendant's criminal background. Both of these departures were based on the same set of prior acts by the defendant. It is clear that as a general principle, the same acts by the defendant cannot be used as the basis for two separate upward departures. *United States v. Lallemand,* 989 F.3d 936, 939 (7th Cir. 1993). However,

prior convictions for sexual abuse may support both an upward departure for a pattern of sexual abuse against children under § 2G2.2(b)(4) and an increase in a defendant's criminal history level under § 4A1.3(e) without violating the stricture against double-counting:

> [A]n upward departure may be warranted if the defendant received a [pattern] enhancement under subsection (b)(4) but that enhancement does not adequately reflect the seriousness of the sexual abuse or exploitation involved. . . . Prior convictions taken into account under subsection (b)(4) are also counted for purposes of determining criminal history points.

U.S.S.G. § 2G2.2, Application Note 2; *United States v. Griffith,* 344 F.3d 714, 719 (7th Cir. 2003).

Whether unprosecuted, but uncontroverted, crimes fall within the double-counting exception of Application Note 2 appears to be a question of first impression.[2] We find that under the unique circumstances at hand, the evidence of McCaffrey's crimes should be considered the equivalent of convictions. Specifically, in light of McCaffrey's explicit on-the-stand confessions during the sentencing phase, corroborated by extensive victim testimony and contemporaneous documentary evidence, the acts were proven beyond a reasonable doubt. Thus, we conclude that the district court properly used the defendant's *admitted, uncontroverted, and corroborated* acts of abuse to justify two distinct upward departures from the guidelines.

This approach is consistent with the intention of the Guidelines to enable district judges to give extended

---

[2] *United States v. Turchen,* 187 F.3d 735 (7th Cir. 1999) upheld a double enhancement where the defendant had been tried for the prior crimes, but found not guilty by reason of mental defect.

sentences to those with a long history of abusing children. Application Note 2 explains that "an upward departure may be warranted if the defendant received a [pattern] enhancement under subsection (b)(4) but that enhancement does not adequately reflect the seriousness of the sexual abuse or exploitation involved." Thus, the Guidelines permit judges to depart upward where the defendant's history of abusive behavior is so extensive or so vicious that a five-level pattern enhancement is inadequate. Under the circumstances presented by this case, where McCaffrey sexually molested dozens of children on hundreds of occasions over the course of decades, and where the abuse was aggravated by McCaffrey's exploitation of the trust families placed in him as a clergyman, the district court was justified in its conclusion that a five-level pattern enhancement was insufficient.

B. The District Court Was Correct to Sentence McCaffrey under the Trafficking Guideline instead of the Possession Guideline.

Whether a district court judge sentenced the defendant under the correct guideline is a question of the application of law to fact and is reviewed *de novo. Turner*, 400 F.3d at 500. McCaffrey points to decisions from two sister circuits holding that end users of child pornography should be sentenced only under the more lenient possession guideline, § 2G2.4, and that the harsher trafficking guideline, § 2G2.2, should be reserved for those who distribute material, despite the fact that the language of the trafficking guideline states that "receiving" the material via interstate transmission is sufficient to warrant the more severe trafficking penalty. *See United States v. Farrelly,* 389 F.3d 649, 652 (6th Cir. 2004) (consumer of child pornography should be sentenced under § 2.2G2.4); *United States v. Davidson,* 360 F.3d 1374, 1377 (11th Cir. 2004) (same). As

an initial matter, the November 2004 revision of the Guidelines Manual, which deleted § 2G2.4 by consolidation with § 2G2.2, may have affected the precedential value of those cases.[3] At any rate, this revision effects no change in the law of this circuit, as even before the revision, we consistently held that a defendant who receives child pornography through interstate commerce must be sentenced under the trafficking guideline rather than the possession guideline, even in the absence of evidence of distribution or intent to distribute. *United States v. Myers,* 355 F.3d 1040 (7th Cir. 2004); *United States v. Malik,* 385 F.3d 758 (7th Cir. 2004).

McCaffrey's entire argument is that this court should revisit and reject the rule adopted by two of its own panels in favor of the interpretation preferred in the Eleventh Circuit, which found that the trafficking statute applied only to those who disseminated the illegal materials, and not to those who were solely the end consumers. In contrast, we have previously held that because the trafficking statute explicitly encompasses receipt of materials, end consumers who purchase material for their own use fall within its bounds. *Id*. We see no need to revisit the holding here. The district court did not err when it sentenced McCaffrey under § 2.2G2, the harsher trafficking guideline.

---

[3] The Sixth Circuit recently repudiated its decision in *Farrelly* because of the revised guideline. *United States v. Williams*, 411 F.3d 675, 678 n. 1 (6th Cir. 2005).

C.  The District Court's Sentence Was Reasonable in
     Light of Booker, and No Remand Is Necessary under
     *Paladino*.

McCaffrey also contends that the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), necessitates resentencing because his sentence was increased on the basis of facts not proven to a jury beyond a reasonable doubt or admitted by him. Notwithstanding McCaffrey's arguments to the contrary, *Booker* does not stand for a defendant's right to have every element of every sentence enhancement proved to a jury beyond a reasonable doubt; rather, it transformed the Federal Sentencing Guidelines from a mandatory framework to an advisory one. *Booker*, 125 S. Ct. at 738. Because McCaffrey raises this contention for the first time on appeal, our review is for plain error. *United States v. Lee*, 399 F.3d 864 (7th Cir. 2005). "In order to show plain error the defendant must establish, among other things, that the error 'affected substantial rights'—which is to say that it made the defendant worse off." *Id.*

In order to answer that question, we ask whether the sentencing judge, operating under the discretion permitted by *Booker*, might have sentenced McCaffrey any differently. If we can be certain that he would have imposed the same sentence given greater freedom, then no error was committed, and no remand for resentencing is required. *Id.*

In this case, there is no doubt that the district court was inclined to sentence McCaffrey to the longest possible prison term. The guidelines formula, with its multiple enhancements and upward departures, resulted in a sentencing range of 360 months to life. As he could not sentence McCaffrey to more than 5 years for possession and 15 years for trafficking, the judge sought to impose consecutive sentences and asked the government for supplemental authority regarding his power to do so. Upon receiving the

government's supplemental filing, the judge amended his original sentencing order to provide that the sentences should be consecutive. In amending his original sentencing order, the judge explicitly stated that he was imposing the maximum sentence of consecutive terms of 180 months and then 60 months in order "to produce a combined sentence that is as near as possible to the total punishment allowed under the statute," *i.e.*, 360 months to life. Transcript of Resentencing at 5, *McCaffrey* (No. 02 CR 591) (Feb. 6, 2004).

Thus, there is no question about what the judge would have done had he known the guidelines were advisory; he would have put McCaffrey away for as long as he could. An indication of how strongly the judge felt about the severity of McCaffrey's conduct can be found in the judge's comments at the sentencing hearing:

> I had the opportunity to hear these [victims] speak, and their testimony was as stark and as tragic and as horrifying as anything I've heard in a courtroom. . . . [T]he defendant paid for a membership to receive photographs of children being molested, abused, and otherwise sexually exploited; in so doing, the defendant supported that conduct and supported the people that inflict that kind of conduct on young children . . . McCaffrey did this to fulfill his own sexual needs. . . . Vincent McCaffrey committed these acts which were a serious violation of the trust of a child, and he took from these children maybe a child's most precious attribute, innocence.

Transcript of Sentencing Hearing at 17, 40, *McCaffrey* (No. 02 CR 591) (Jan. 30, 2003). Under the circumstances here, it is not necessary to remand the case under *Paladino* and *Lee*.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the ruling of the district court.

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*