In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2087

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RALPH W. ANGLE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:98 CR 37—**James T. Moody,** *Judge.*

ARGUED OCTOBER 14, 2009—DECIDED MARCH 15, 2010

Before COFFEY, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* This is the fourth time Ralph Angle appeals the sentences imposed for his child-pornography crimes. Three times we have remanded for resentencing because of our uncertainty about the reliability of information used to justify a total period of imprisonment well above the range established by the sentencing guidelines. In our last remand we also directed the district court to explain why a "pattern of

abuse" upward adjustment did not fully account for the uncharged conduct used to justify the stiff punishment. Both of these concerns have now been satisfied. Finally, the district court did not abuse its discretion in thwarting Angle from gaining personal access to the Internet during the period of his supervised release.

## I.  BACKGROUND

Angle was found guilty in 1998 of possessing child pornography, attempting to receive child pornography, and attempting to entice a child to engage in prohibited sexual activity, in violation of 18 U.S.C. §§ 2252(a)(4)(B), 2252(a)(2), and 2422(b). He already had a 1977 conviction for sodomy (involving a 15-year-old) and a 1987 conviction for child molestation. At Angle's initial sentencing hearing in September 1999, the district court imposed a sentence of 325 months in prison, a significant increase above the range of 151 to 188 months calculated by the court under the 1998 version of the sentencing guidelines. That first sentencing hearing predated *United States v. Booker*, 543 U.S. 220 (2005), so the judge's freedom to exceed the guidelines range was still cabined by mandatory rules on "departures." The judge concluded that Angle's sodomy conviction, which was too old to count in his criminal history score, war-ranted an upward departure under U.S.S.G. § 4A1.3, which encourages sentencing courts to exceed the guidelines imprisonment range if the defendant's criminal history category substantially understates the seriousness of his criminal history or the likelihood of recidivism. We

ordered resentencing because the district court had not followed the specific steps that, under circuit precedent interpreting § 4A1.3, were essential to depart based on that guideline. *United States v. Angle* (*Angle I*), 234 F.3d 326, 344 (7th Cir. 2000). We also concluded that the district court might have miscalculated the guidelines range and directed further study of that question on remand. *Id*. at 345.

The district court resentenced Angle in 2001. The court recalculated a lower guidelines range of 97 to 121 months but still imposed the same amount of imprisonment. In explaining its upward departure—a greater departure than before—the court again cited Angle's uncounted sodomy conviction, but this time the court also explicitly relied on additional information. For example, the court noted that Angle had bragged about a sexual encounter with a Georgia boy in an online chat with an individual Angle thought was a 13-year-old boy. And the court cited accusations that Angle had traveled to Mexico to have sex with children; that he had committed acts of sexual abuse involving his niece, his nephew, and his girl-friend's daughter; and that he preyed on children he met at a gym in Indiana. The government introduced a letter from the nephew's wife accusing Angle of molesting several of his young relatives. Finally, a postal inspector testified that amateur videotapes recovered from Angle when he reentered the United States from Mexico depicted boys performing sex acts. But the district court did not explain why it credited these accounts of un-charged criminal acts, so we again remanded for resentencing and directed that the case be reassigned to

a different judge. *United States v. Angle* (*Angle II*), 315 F.3d 810 (7th Cir. 2003).

At the third sentencing hearing in 2005, the new judge decided that Angle's conduct warranted 300 months' imprisonment, 25 fewer than before, but still well above the guidelines range. The district court took into account the evidence introduced at trial and during the first two sentencing hearings, and also allowed the government to introduce new testimony from one previously unavailable witness, a woman who said that Angle had molested her as a child when he was dating her mother and living with them in California. The district court cited Angle's long history of sexual abuse of children to justify the substantial increase above the guidelines range, but the judge overlooked our instruction to explain why he deemed reliable the evidence of uncharged sexual abuse. We thus sent the case back again for resentencing, and this time we also directed the court to explain why its application of a 5-level upward adjustment for engaging in a "pattern of activity involving the sexual abuse or exploitation of a minor," *see* U.S.S.G. § 2G2.2(b)(4) (1998) (current version at U.S.S.G. § 2G2.2(b)(5)), did not fully account for the uncharged conduct that contributed to the above-range period of incarceration. *United States v. Angle* (*Angle III*), 216 F. App'x 557 (7th Cir. 2007).

In late 2007, well after *Booker* was decided, the district court conducted yet another sentencing hearing, which is the subject of this appeal. The court reviewed an updated presentence report, evaluated the evidence pre-

sented at trial and during the prior sentencing hearings, and heard live testimony from Angle's niece, his two nephews, an employee from the Indiana gym, a gym patron and her son, the Georgia boy, and the postal inspector. As we had directed, the court made extensive findings concerning the reliability of the allegations of molestation, and Angle does not contest those findings on appeal. Appellant's Br. at 13. The court still applied the 1998 guidelines but also took note of amendments promulgated since Angle's first sentencing in 1999; Angle's imprisonment range under the 1998 version of the guidelines was 97 to 121 months but would have been 360 months to life under the 2006 version then in effect.

In again settling on a total period of imprisonment of 300 months, the district court explained that the "pattern of abuse" upward adjustment under § 2G2.2(b)(4) did not fully account for Angle's extensive history of sexual misconduct involving children. The court reasoned that the "pattern of abuse" adjustment would apply any time a defendant engaged in at least two instances of sexual abuse or exploitation, and yet Angle, whose pattern of misconduct had run virtually unchecked for 20 years, was one of the worst child predators the judge had seen in his 25 years on the bench. The court observed that Angle had abused a position of trust as a relative to three of the abused children, and had established a *modus operandi* of ingratiating himself with single mothers in order to abuse their children. Moreover, the court explained, Angle had produced child pornography in addition to consuming it. The court noted a series of e-mails Angle had sent to what he thought was a distributor

of child pornography in Colorado (but was actually a government front). These emails established that during a trip to Mexico, Angle helped create at least one sexually explicit video of children. In one e-mail sent before his departure, Angle boasted that he was traveling to Mexico to "play with boys" and had them "lined up already and waiting for our arrival." This extensive evidence, the court concluded, signaled that Angle's crimes would quickly resume upon his release from prison. He showed no remorse, and despite telling the judge that he now wanted to participate in sex-offender treatment, Angle had passed up opportunities to do so after his two prior convictions for sex offenses against children.

## II. ANALYSIS

### A. Above-range Sentence Warranted

As we noted, in this appeal Angle does not dispute that the district court adequately explained why it found the evidence of uncharged acts of sexual abuse to be reliable. That prong of our last remand is satisfied. Angle contends, however, that the court still did not justify the need for an above-range sentence after applying the "pattern of abuse" upward adjustment under § 2G2.2(b)(4). That guideline mandates a 5-level increase in offense level "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." U.S.S.G. § 2G2.2(b)(4) (1998) (current version at U.S.S.G. § 2G2.2(b)(5)); *see United States v. Osborne,* 551 F.3d 718, 721-22 (7th Cir. 2009). As discussed above, the district court gave several reasons for concluding that an above-range

sentence was warranted in addition to the "pattern of abuse" adjustment: Angle had an unbroken, 20-year pattern of abusive conduct; he exploited positions of trust to get at his young victims; he *created* as well as consumed child pornography; he showed no remorse; and he would have faced a significantly higher imprisonment range if sentenced under the current version of the guidelines. Angle insists that the first four reasons are fully embodied in § 2G2.2(b)(4), and that the last is improper given the limited scope of our remand. We reject both contentions.

The district court first explained that Angle's pattern of abuse was atypical. Many of the reported decisions analyzing the "pattern of abuse" adjustment involve a narrower range of abuse than was present in this case. *See, e.g., United States v. Alvarez,* 478 F.3d 864, 865-66 (8th Cir. 2007) (upholding application of the adjustment where defendant repeatedly abused one victim); *United States v. Gunderson,* 345 F.3d 471, 472-73 (7th Cir. 2003) (upholding application of the adjustment where defendant abused two victims); *United States v. Lovaas,* 241 F.3d 900, 901 (7th Cir. 2001) (upholding application of the adjustment where defendant abused three victims). Indeed, the commentary to § 2G2.2 encourages district courts to impose a term of imprisonment outside the guidelines range if an upward adjustment under subsection (b)(4) is inadequate to account for the seriousness of the sexual abuse or the exploitation involved. U.S.S.G. § 2G2.2 cmt. n.2 (1998) (current version at U.S.S.G. § 2G2.2 cmt. n.7); *United States v. Griffith,* 344 F.3d 714, 719 (7th Cir. 2003). We cannot disagree with the district

court that Angle's prolonged and extensive pattern of abusive conduct placed him squarely within the group of offenders contemplated by the commentary.

Second, the district court thought it significant that Angle's pattern of abuse involved exploiting positions of trust. Angle opposes this reasoning on two fronts, though his initial objection is frivolous. The government's evidence, he says, does not show that he held a position of trust involving his victims. But sentencing judges are not bound by the stringent evidentiary standards applicable at trial; rather, the evidence need only be reliable. *United States v. Cooper*, 591 F.3d 582, 591 (7th Cir. 2010); *United States v. Johnson*, 489 F.3d 794, 796 (7th Cir. 2007). At Angle's latest sentencing hearing, the judge found that Angle had abused his niece and nephews, and had targeted single mothers whose trust he could engender in order to abuse their children. These factual findings are reviewed only for clear error, *United States v. Davis*, 442 F.3d 1003, 1008-09 (7th Cir. 2006), and though Angle disagrees with the inference drawn by the district court from the evidence, he has not identified any error in the court's assessment of that evidence.

Angle's other objection to receiving an above-range sentence in part for exploiting positions of trust rests on our decision in *United States v. McCaffrey*, 437 F.3d 684 (7th Cir. 2006). That child-pornography prosecution involved a priest who was sentenced to 240 months— 60 less than Angle—after abusing more than 100 children, most of them from his congregations. 437 F.3d at 686-88. Angle reads that outcome as confirmation that his own

situation does not warrant both a "pattern of abuse" upward adjustment and an increase above the resulting guidelines range. But Angle did not read our *McCaffrey* opinion carefully. In that case the government successfully argued that the defendant's pattern of abuse warranted not only the 5-level increase under the "pattern of abuse" adjustment, but also a (pre-*Booker*) upward departure equivalent to another 5 offense levels. *Id*. at 686-87. We rejected the defendant's "double counting" argument and upheld both increases, which effectively yielded a guidelines imprisonment range of 360 months to life. *Id*. at 687-89. The only reason that the defendant in that case averted a higher prison sentence is that he was charged with just two counts carrying a combined maximum of 20 years, which is what the district court gave him. *Id*. at 687-88. The sentencing judge was explicit, however, that the defendant would have been imprisoned for longer if not for the statutory caps. *Id*. at 690. At all events, *McCaffrey* represents an extreme, and simply because Angle's conduct was less egregious does not mean that his pattern of abuse could not sustain both the upward adjustment and an above-range sentence. The district court concluded that there was reliable evidence that Angle abused positions of trust and, on this basis, reasoned that Angle's case was comparable to *McCaffrey*. We agree with that assessment.

A third reason given by the district court for sentencing Angle above the guidelines range is that he *created* child pornography. Angle not only traveled to Mexico for the specific purpose of engaging in sexual abuse of children, but he arranged for the encounters to be

filmed so that he could trade the tapes. The upward adjustment for a pattern of abuse is designed to punish sexual abuse or exploitation, *McCaffrey*, 437 F.3d at 688; *Lovaas*, 241 F.3d at 904, not the production of child pornography, *see* U.S.S.G. § 2G2.2 cmt. n.1 ("'Sexual abuse or exploitation'" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor."); *United States v. Williamson*, 439 F.3d 1125, 1139 n.16 (9th Cir. 2006); *United States v. Woodward,* 277 F.3d 87, 91 (1st Cir. 2002); *United States v. Kemmish*, 120 F.3d 937, 941-42 (9th Cir. 1997). Section 2G2.2 does not address the creation of child pornography, and it was appropriate for the district court to take into account that narrow scope in exercising its sentencing discretion. *See Griffith*, 344 F.3d at 719 (explaining that an upward adjustment may be inadequate to address the degree of sexual exploitation); *see also United States v. Whorley*, 550 F.3d 326, 339-42 (4th Cir. 2008) (affirming above-range sentence as reasonable where circumstances were atypical and not taken into account by the guidelines). In fact, Angle's involvement in making child pornography might have warranted a cross-reference to the higher offense levels in U.S.S.G. § 2G2.1 for production offenses. *See* U.S.S.G. § 2G2.2(c) (1998); *United States v. Dawn*, 129 F.3d 878, 880-81 (7th Cir. 1997).

Fourth, the district court was unpersuaded that Angle had shown any remorse for his abusive conduct. Twice previously Angle had been convicted of sex offenses against children, and after those convictions he declined opportunities to participate in treatment for sex

offenders. What is more, the court observed, Angle boasted about his criminal conduct in written correspondence and Internet chat messages. The absence of remorse, the court reasoned, made it likely that Angle would resume his abusive conduct when he is released. Angle's future dangerousness is not accounted for in § 2G2.2(b)(4), and, thus, there was no error in the judge's decision to impose an above-range sentence on this basis. *See Griffith*, 344 F.3d at 719-20 (upholding upward departure based on defendant's two prior convictions for sexual abuse of children and his three failed attempts to complete treatment for sex offenders); *United States v. Turchen*, 187 F.3d 735, 742 (7th Cir. 1999) (upholding upward departure in child-pornography prosecution where defendant's criminal history and unsuccessful rehabilitation suggested risk of recidivism).

Angle asserts that none of these reasons is "compelling," but his contention is obviously subjective and, regardless, misunderstands the nature of our review. Our task is simply to assess whether the overall prison sentence imposed by the district court is reasonable in light of the justifications for that sentence. *E.g., United States v. Perez*, 581 F.3d 539, 548 (7th Cir. 2009); *United States v. McKinney*, 543 F.3d 911, 913 (7th Cir. 2008). The sentencing guidelines are advisory; the imprisonment range is one of the factors enumerated in 18 U.S.C. § 3553(a), but a district court does not need a "compelling" reason to exceed the range. *United States v. Nelson*, 129 S. Ct. 890, 892 (2009); *United States v. Kirkpatrick,* 589 F.3d 414, 415-16 (7th Cir. 2009). That was the point of *Kimbrough v. United States*, 552 U.S. 85 (2007), which, after our last remand, clarified

that a district court is free to weigh any sentencing factor differently than the Sentencing Commission, even in a typical case. *Kimbrough*, 552 U.S. at 101; *United States v. Alldredge*, 551 F.3d 645, 647 (7th Cir. 2008). All that matters is that the sentence imposed be reasonable in relation to the "package" of reasons given by the court, and in that sense *Kimbrough* has eroded the premise in our last remand of requiring the district to quantify how Angle's situation exceeded a "mine run" application of § 2G2.2(b)(5). *See Kimbrough,* 552 U.S. at 110; *McKinney,* 543 F.3d at 913. The district court did exactly what we asked in explaining its application of subsection (b)(4), but, as we now recognize, it was also within the court's power to disagree with the weight given by the Sentencing Commission to the "pattern of abuse" adjustment.

That brings us to the final reason given by the district court for its sentence: the imprisonment range that Angle would have faced under the 2006 version of the guidelines in effect when he was last sentenced. Angle principally contends that the language of our remand precluded the court from taking notice of revisions to § 2G2.2, but we imposed no such limitation. Angle is correct in assuming that a district court must adhere to the scope of a remand from this court, *United States v. White,* 406 F.3d 827, 831 (7th Cir. 2005), but the scope of any remand is determined from reading all, not part, of an opinion, *United States v. Husband,* 312 F.3d 247, 251 (7th Cir. 2002); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996). After oral argument in Angle's third appeal, his lawyer notified us that Angle had been apprised of the possibility that his fourth sentencing would be governed

by the updated guidelines, and we responded with the observation that applying the current guidelines on remand would not raise an *ex post facto* concern; we did not imply that using the current guidelines would exceed the scope of our remand. *Angle III*, 216 F. App'x at 559 n.1. Our decision in *Angle III* was released before this court clarified that, under 18 U.S.C. § 3742(g), the guidelines in effect at the time of the original sentencing must be used again when an appeal results in an order for resentencing, *United States v. Tanner*, 544 F.3d 793, 795 (7th Cir. 2008), but the force of this statutory limitation does not alter the scope of the remand we contemplated. Moreover, even though § 3742(g) precluded the district court from *applying* the 2006 guidelines, the statute did not bar the court from *consulting* the Sentencing Commission's current views as a guide to its exercise of *Booker* discretion. *United States v. Johnson,* 427 F.3d 423, 427 (7th Cir. 2005); *United States v. Coe,* 220 F.3d 573, 578 (7th Cir. 2000). And that is all the district court did here. To quote the district court, "it would be impossible to ignore the perverse fact that, were Angle to be sentenced for the same conduct under the current guidelines, his advisory range would be 360 months to life, and the court would need to explain why a sentence of less than 360 months is appropriate."

Angle also contends that the district court's assessment of his guidelines range under the 2006 version of § 2G2.2 was inaccurate. But this assertion really comes down to his belief that the court did not adequately explain its conclusion that, under the 2006 guidelines, he would receive a 5-level increase for intending to trade

child pornography for other child pornography, *see* U.S.S.G. § 2G2.2(b)(3)(B) (2006), plus a 4-level increase for possessing 300 to 600 images of child pornography, *id.* § 2G2.2(b)(7) (2006). Before Angle's latest resentencing, however, the probation officer revised the presentence report to explain that Angle would be eligible for both increases. Angle did not object on the ground that the probation officer's proposed findings were not supported by the evidence, and the district court relied on those findings, which the court was entitled to do. *See United States v. Heckel*, 570 F.3d 791, 795 (7th Cir. 2009); *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004). Had Angle wished to cast doubt on the reliability of the information in the revised presentence report, he was obligated to dispute its accuracy, which he did not do. *See Heckel*, 570 F.3d at 795. This final argument, then, like Angle's previous contention, is without merit. We thus uphold the 300-month total imprisonment.

## B. Special Condition of Supervised Release

Angle makes one additional argument that arose for the first time after our last remand. At the final resentencing, the district court imposed as a special condition of supervised release that Angle "shall not have personal access to computer Internet services." This condition was not suggested in advance but first raised in open court during sentencing. Angle objected to that condition, and on appeal he contends that the district court was required to give him notice before imposing such a condition and that barring him from using the Internet is both unnecessary and unreasonable.

We review special conditions of supervised release for an abuse of discretion. *Angle I*, 234 F.3d at 346. When imposing supervised release, a district court must include several mandatory conditions, may impose any condition set forth as a discretionary condition of probation, and may also include any other condition it considers to be appropriate. *See* 18 U.S.C. § 3583(d); § 3563(b)(1)-(10). The conditions however, must be reasonably related to (1) the defendant's offense, history and characteristics; (2) the need for adequate deterrence; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with treatment. 18 U.S.C. § 3583(d); *United States v. Holm*, 326 F.3d 872, 877-78 (7th Cir. 2003). They must also "involve no greater deprivation of liberty than is reasonably necessary" to effectuate sentencing purposes. 18 U.S.C. § 3583(d)(2). Although we have expressed skepticism about the reasonableness of banning Internet use entirely, *see United States v. Silvious*, 512 F.3d 364, 371 (7th Cir. 2008); *Holm*, 362 F.3d at 877-78, we nonetheless have left open the possibility that such a condition might be justified if the Internet was used to commit the crime of conviction, *Silvious*, 512 F.3d at 371; *United States v. Scott*, 316 F.3d 733, 735 (7th Cir. 2003).

Angle first argues that the court was required to give notice of its intent to impose this condition of supervised release because it was analogous to a departure from the guidelines. This argument fails. Post-*Booker*, which made the guidelines advisory, *Angle III*, 216 Fed. App'x at 560, and four sentencing hearings, Angle could have had no expectations for a sentence within guideline range. As

the guidelines contemplate a term of supervised release, and provide the district court with broad discretion in imposing appropriate conditions for the supervised release, Angle could not reasonably believe that an Internet ban was so "out of the ordinary," as to require notice. *United States v. McKissic*, 428 F.3d 719, 725 (7th Cir. 2005). In fact, the 2006 guidelines which the district court had the discretion to consult, specifically contemplate limiting the use of a computer in cases where the defendant used a computer for sex offenses. U.S.S.G § 5D1.3(d)(7)(B) (2006).

Angle next argues that the condition is unnecessary and unreasonable. We disagree. In 1997 and 1998, when the Internet was fairly new, Angle was convicted of using the Internet to solicit a minor for sex. He also used the Internet to set up a pornography trade with a distributer, and possessed an extensive amount of child pornography on computer diskettes and zip disks. Furthermore, his use of the Internet was not integrally connected to his profession as he was previously employed as a salesman and mechanic. These facts easily distinguish Angle from the defendant in *Holm* who was convicted of simply possessing child pornography and used the computer and Internet extensively in his occupation as a information systems technologist. Finally, unlike the district court in *Holm*, here the district court did not impose a complete ban on the Internet, disallowing only "personal" access to Internet services. Under these circumstances, we cannot conclude that the district court abused its discretion in thwarting Angle from gaining personal access to the Internet during the period of his

supervised release. *See, e.g., United States v. Zinn,* 321 F.3d 1084, 1092-93 (11th Cir. 2003); *United States v. Paul,* 274 F.3d 155, 166-66 (5th Cir. 2001)*; United States v. Crandon,* 173 F.3d 122, 127-28 (3d Cir. 1999); *c.f. United States v. Perazza-Mercado,* 553 F.3d 65, 70 (1st Cir. 2009) (holding that total Internet ban unrelated to charged offense was impermissibly broad).

## III.  CONCLUSION

Accordingly, we AFFIRM the district court's sentence.