NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 3, 2011
Decided August 31, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

Nos. 11-1239 & 11-1262

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeals from the United States District Court for the Southern District of Illinois. |
| *v.* | Case Nos. 10-CR-30026-MJR & 10-CR-30174-MJR |
| ANDRE P. INGRAM, *Defendant-Appellant*. | Michael J. Reagan, *Judge*. |

**O R D E R**

Andre Ingram, a convicted felon, was twice arrested while in possession of a firearm. Officers first apprehended him while selling drugs. Months later, Ingram threatened law enforcement officers with a semi-automatic pistol. Believing he was about to fire, officers shot first and badly injured him. Ingram then pleaded guilty to being a felon in possession of a firearm, *see* 18 U.S.C. § 922(g)(1), and to assaulting, resisting, or impeding a federal agent, *see* 18 U.S.C. § 111(a)(1). At sentencing, the court imposed a 120-month sentence for the felon-in-possession charge (Case No. 10-CR-30026) to run concurrently with a 180-month sentence for assaulting the officers (Case No. 10-CR-30174). Ingram appeals, challenging only the substantive reasonableness of his above-range, 180-month sentence. We affirm.

Ingram was first arrested while selling drugs by agents of a WAVE (Working Against Violent Elements) task force in East St. Louis, Illinois. The WAVE task force was created to combat the high level of violent crime in East St. Louis: shootings, homicides, and frequent gunfire. WAVE agents apprehended Ingram in the backseat of a vehicle, armed with a revolver, and selling cannabis. He eventually pleaded guilty to being a felon in possession of a firearm.

Months later, Ingram was again arrested by agents of the WAVE task force. FBI Special Agent Kelly and Sergeant Latham of the Illinois State Police were pursuing fleeing suspects when they knocked on the front door of a residence and announced that they were police officers. Answering the door drunk and high, Ingram replied with slurred speech, "What the fuck do you want?," and exposed only the left side of his body, while hiding his right hand. When Sergeant Latham ordered Ingram to reveal both hands, Ingram refused and peered down at his right hand. Sergeant Latham again ordered Ingram to reveal his right hand. Ingram responded, "You wanna see my hand . . . here." Ingram took a half step forward and raised his right hand, holding a semi-automatic pistol. The agents believed Ingram was about to fire, and shot him several times in self defense, according to the PSR. As a result:

> [Ingram] suffered from multiple gunshot wounds at close range. He was shot in the head, upper left arm, abdomen, and chest. He was left with several scars, and no longer has a left eyeball. The tip of his nose was missing, and skin from his forehead was used to repair his nose. * * * He was treated for a small bowel injury; multiple fractures, hemorrhages, a ruptured left eye globe, and contusions; and a frontotemporal subdural hematoma. Numerous bullet fragments were noted throughout his upper body.

(PSR ¶ 90-92). The semi-automatic pistol was later found to be fully loaded, in working condition, and stolen. Medical records documented that Ingram was under the influence of alcohol, marijuana, and cocaine.

At sentencing, the court imposed a 120-month sentence on the felon-in-possession charge, *see* 18 U.S.C. § 922(g)(1), to run concurrently with a 180-month sentence for assaulting the agents, *see* 18 U.S.C. § 111(a)(1). Ingram accepted the factual statements in the presentence investigation report and the district court's guidelines calculation of 92 to 115 months' imprisonment (based on a total offense level of 23 and criminal history of category of VI). The 180-month sentence was well above the guidelines range, but still below the 240-month statutory maximum, *see* 18 U.S.C. § 111(b). In pronouncing the sentence, the court noted that Ingram had assaulted officers who were serving in a crime-ridden community;

that the guidelines accounted for the assault of only one officer, not two; that Ingram was captured with different firearms on separate occasions; and that Ingram was unremorseful. In mitigation, the district court considered that Ingram had been badly injured, but concluded that his injuries were the result of his own reckless conduct.

Ingram filed two notices of appeal after the district court entered judgment in the felon-in-possession matter (Case No. 10-CR-30026) and after the court imposed an above-range sentence for assaulting the officers (Case No. 10-CR-30174), which this court consolidated for briefing and disposition.

On appeal, Ingram argues that the district court abused its discretion by imposing the above-range sentence. He contends that the court failed to engage in a reasoned weighing of the sentencing factors in § 3553(a) and, instead, based the above-range sentence on factors common to all offenders who commit similar crimes.

The question presented is whether Ingram's above-range sentence was substantively reasonable, under an abuse-of-discretion standard, in light of the sentencing factors of § 3553(a). *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Courtland*, 642 F.3d 545, 550-51 (7th Cir. 2011). There is no presumption of unreasonableness merely because a sentence falls outside the advisory guidelines range. *See United States v. Angle*, 598 F.3d 353, 359 (7th Cir. 2010). Instead this court ordinarily defers to sentencing courts when "the factors in 18 U.S.C. § 3553(a), as a whole, justify the extent of the variance from the guidelines." *United States v. Wise*, 556 F.3d 629, 632-33 (7th Cir. 2009). On review, this court evaluates whether the district court seriously considered sentences both within and outside that recommended range, and explained why it selected "an unusually lenient or unusually harsh sentence." *United States v, McKinney*, 543 F.3d 911, 913 (7th Cir. 2008).

The district court has adequately justified its selection of a sentence under the § 3553(a) factors. First the court was concerned with protecting the East St. Louis community and with the need to "afford adequate deterrence to criminal conduct,"*see* 3553(a)(2)(B), because of the escalating level of violent crime there. Next in discussing the "nature and circumstances" of Ingram's offense, *see* 3553(a)(1), the district court found that the guidelines did not reflect the seriousness of Ingram's assault because they presumed the assault of a single officer, rather than assaults on multiple officers. And as for the "seriousness of the offense," *see* 3553(a)(2), the court found persuasive the agents' victim statements, which described the particularized harm Ingram inflicted on them by brandishing a firearm at close range and forcing them to fire. Further, in considering the "characteristics of the defendant," *see* 3553(a)(1), the district court considered that Ingram was a felon who was twice arrested on different occasions in the possession of different firearms. Last, in evaluating "the need for the sentence imposed," *see* § 3553(a)(2), the

district court explained that Ingram was in the highest criminal-history category and had disregarded law enforcement officers and the criminal justice system in the past. Ingram had shown remorse only for "having a firearm as a convicted felon," but "nothing about the . . . effect on the officers in this case."

Ingram contends that, given his grisly physical injuries, the district court was not lenient enough when imposing his sentence. He argues that the injuries are in themselves a form of punishment that will strongly dissuade him from resisting or impeding law enforcement again, and will deter anyone who learns of them. The court, however, considered his injuries and reasonably discounted them. At sentencing Ingram explained that he knew the agents were law enforcement officers because suspects in the house told him that officers had arrived. And according to the PSR, agent Kelly and sergeant Latham were clearly identified as law enforcement officers and announced their official status at the door. The court, therefore, deemed Ingram's wounds self inflicted: the direct result of resisting officers at the door with a firearm. The sentencing court was free to discount the physical injuries when weighing whether the injuries amounted to sufficient specific and general deterrence under § 3553(a)(2). *See Angle*, 598 F.3d at 359.

Ingram further contends that, when fashioning the above-range sentence, the district court abused its discretion by considering the high rate of violent crime in East St. Louis. The district court, however, was permitted to consider the level of violent crime in East St. Louis when gauging the need for general deterrence to protect members of that community. *See United States v. Hill*, — F.3d —, 2011 WL 2611301, *9-10 (7th Cir. 2011); *United States v. Anderson*, 517 F.3d 953, 966 (7th Cir. 2008); *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006); *see, e.g., Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010). Given that the district court fashioned an above-range sentence to deter violent crime and to promote safety in the community, its reasoning was not an unreasonable exercise of its discretion. *See United States v. Gooden*, 564 F.3d 887, 891 (7th Cir. 2009).

In summary, while reasonable jurists may disagree on whether Ingram's conduct warranted an above-range sentence, the district court's sentence was not an abuse of discretion.

AFFIRMED.