In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-4340

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TODD SCOTT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 4:1CR40056-001-JPG—**J. Phil Gilbert**, *Judge.*

ARGUED DECEMBER 6, 2002—DECIDED JANUARY 21, 2003

Before EASTERBROOK, RIPPLE, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Following his guilty plea to fraud, Todd Scott was sentenced to 24 months' imprisonment, the top of the Guideline range derived from his conduct and criminal history. Three years' supervised release is to follow the imprisonment. Scott does not contest any of this, but he does object to an unusual term of the supervised release: "The defendant shall be prohibited from access to any Internet Services without prior approval of the probation officer." No one suggested such a condition in advance; the prosecutor first raised the possibility in open court during sentencing. The rationale for this condition is that a search of the computer in Scott's

office turned up a few images of child pornography. Scott was not convicted of that offense, but the district judge decided to limit his ability to obtain new images following his release from prison. He contends that he should have received some notice that this condition was an option, and he adds that the condition is (in his view) too broad with or without notice. These arguments are related: Notice is helpful only if the defendant could have offered something pertinent at sentencing, which depends on whether the sweeping no-Internet condition could have been narrowed.

Scott's lawyer opposed the condition at sentencing but did not offer any alternative. This omission does not forfeit his ability to advance alternatives on appeal; the surprise addition of the Internet-access condition made it impossible for Scott's lawyer to formulate proposals in time. And there were other possibilities. Scott obtained the pictures from a newsgroup on the Usenet, one of many services available on the Internet. The district judge might have prohibited Scott from accessing newsgroups, as opposed to the entire Internet. Or the judge might have required Scott to install filtering software that would block access to sexually oriented sites, and to permit the probation officer unannounced access to verify that the filtering software was functional. Filtering software is imperfect and may block access to some sites that lack the attributes sought to be put off limits (that's a premise of *American Library Ass'n v. United States*, 201 F. Supp. 2d 401 (E.D. Pa.) (three-judge court), prob. jur. noted, 123 S. Ct. 551 (2002)) but is less restrictive than blocking the whole Internet—and reliance on software avoids any problem in giving discretion to a probation officer, whose errors may be greater.

Knowledge that a condition of this kind was in prospect would have enabled the parties to discuss such options intelligently. Notice also would have afforded defense

counsel time to look up, and remind the district judge about, 18 U.S.C. §3583(d)(2), which says that special conditions of supervised release must entail "no greater deprivation of liberty than is reasonably necessary for the purposes" of sentencing articulated in 18 U.S.C. §3553(a)(2)(B), (a)(2)(C), and (a)(2)(D). The judge did not explain how the no-Internet condition could be thought to entail "no greater deprivation of liberty than is reasonably necessary". If Scott had used the Internet extensively to commit the crime of conviction, then perhaps a ban might be justified. See *United States v. Paul*, 274 F.3d 155 (5th Cir. 2001); *United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999). But here the only justification was misbehavior that neither resulted in a conviction nor was treated as relevant conduct, making an outright ban difficult to justify. The sort of engagement that would have been facilitated by notice to Scott's lawyers could have averted this problem.

So was notice required? The United States says not. In the prosecutor's view, *Burns v. United States*, 501 U.S. 129 (1991)—which holds that the judge or presentence report must alert the defense to the possibility of an upward departure from the Sentencing Guidelines—sets the outer limit. A special condition of supervised release is not an upward departure and that, the prosecutor contends, is that. Yet Scott received the maximum sentence of imprisonment allowed by the Guidelines without a departure. Making supervised release significantly more onerous than the norm adds to the severity of punishment and thus may be seen as a back-door form of departure. If the Guidelines had permitted the judge to sentence Scott to 60 months in prison, then a combination of 24 months in jail plus 36 months of release under conditions no more severe than imprisonment (prisoners can't access the Internet from their cells) would not require special justification. Judges may choose middle grounds between

imprisonment and complete freedom. See, e.g., *United States v. Knights*, 534 U.S. 112 (2001) (rejecting a challenge to a condition of supervised release requiring consent to search by a probation officer, given that there is little privacy inside prison and imprisonment was a lawful alternative to conditional release). But what happened here looks more like a departure, given that Scott received the maximum imprisonment in the prescribed range.

At all events, *Burns* does not hold or say that notice is required *only if* the judge imposes a term of imprisonment that exceeds the Guideline range. *Burns* interprets Fed. R. Crim. P. 32(c), which requires the probation officer to prepare and distribute to the defense before sentencing a report recommending an appropriate disposition. The Court concluded that Rule 32(c) affords the defendant notice about (and thus an opportunity to address) all of the important options to be considered at sentencing. An upward departure from the Guidelines is permissible, *Burns* held, only if the defendant has some notice (from the judge or the presentence report) of this possibility, and thus can prepare to meet it. Exactly the same may be said about unusual conditions of supervised release. *United States v. Angle*, 234 F.3d 326 (7th Cir. 2000), holds that Rule 32 requires notice of terms that are out of the ordinary, and thus unexpected—and the United States does not contend that Scott should have foreseen that Internet access would be a subject of discussion at sentencing. So Scott is entitled to a new proceeding, at which he can offer alternatives to a flat ban and the judge can consider the application of §3583(d)(2).

When rethinking the terms of Scott's supervised release, the court should do what is possible to adopt precise rules. Terms should be established by judges *ex ante*, not probation officers acting under broad delegations and subject to loose judicial review *ex post* (when the prosecutor proposes to reimprison a person for failure to com-

ply with the probation officer's directions). See, e.g., *United States v. Pandiello*, 184 F.3d 682, 688 (7th Cir. 1999); *United States v. Ahmad*, 2 F.3d 245, 248-49 (7th Cir. 1993). Courts should do what they can to eliminate open-ended delegations, which create opportunities for arbitrary action—opportunities that are especially worrisome when the subject concerns what people may read. Is the probation officer to become a censor who determines that Scott may read the *New York Times* online, but not the version of *Ulysses* at Bibliomania.com? Bureaucrats acting as guardians of morals offend the first amendment as well as the ideals behind our commitment to the rule of law.

> The rule of law signifies the constraint of arbitrariness in the exercise of government power. . . . It means that the agencies of official coercion should, to the extent feasible, be guided by rules—that is, by openly acknowledged, relatively stable, and generally applicable statements . . . . The evils to be retarded are caprice and whim, the misuse of government power for private ends, and the unacknowledged reliance on illegitimate criteria of selection. The goals to be advanced are regularity and evenhandedness in the administration of justice and accountability in the use of government power.

John Calvin Jeffries, Jr., *Legality, Vagueness and the Construction of Penal Statutes*, 71 Va. L. Rev. 189, 212 (1985). Instead of delegating a standardless power, the judge should invite the probation officer to recommend restrictions on Internet access designed to ensure that Scott does not use his computer to commit additional crimes while on supervised release. The judge then may establish terms without a risk of arbitrary application.

Scott wants us to go further and say that limitations on Internet access cannot be justified at all, given

§3583(d)(2) and the first amendment. That is not a tenable argument. Computers and the Internet may be used to commit crimes, of which child pornography and fraud are only two examples. Inveterate hackers who have used access to injure others may be ordered to give up the digital world. If full access posed an unacceptable risk of recidivism, yet all controls on access were forbidden, then a judge would have little alternative but to increase the term of imprisonment in order to incapacitate the offender. Few defendants would deem that a beneficial exchange; most would prefer the conditional freedom of supervised release, even with restrictions on using the Internet, to the more regimented life in prison.

This is not to gainsay the point of *United States v. Sofsky*, 287 F.3d 122, 126-27 (2d Cir. 2002); *United States v. Peterson*, 248 F.3d 79, 82-84 (2d Cir. 2001); and *United States v. White*, 244 F.3d 1199, 1206 (10th Cir. 2001), that because the Internet is a medium of communication a total restriction rarely could be justified. The Internet is a vast repository, offering books, newspapers, magazines, and research tools along with smut. A judge who would not forbid Scott to enter a video rental store (which may have an adult-video section) also should not forbid Scott to enter the Internet, even though Disney's web site coexists with others offering filthy pictures or audio files circulated in violation of the copyright laws. See *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001). A judge who would not forbid a defendant to send or receive postal mail or use the telephone should not forbid that person to send or receive email or to order books at Amazon.com. Scott does not have a record of extensive abuse of digital communications that could justify an outright ban. As the third circuit recently observed, when limiting *Crandon* to situations of that kind, "a total ban on internet access prevents use of email, an increasingly widely used form of communication, and other common-

place computer uses such as getting a weather forecast or reading a newspaper online. There is no need to cut off . . . access to email or benign internet usage when a more focused restriction . . . can be enforced by unannounced inspections of material stored on [the defendant's] hard drive or removable disks." *United States v. Freeman*, 2003 U.S. App. LEXIS 196 *16-17 (3d Cir. Jan. 6, 2003). What conditions short of a ban may be appropriate in this case is a subject for the district judge to address in the first instance.

VACATED AND REMANDED

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
