In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3845

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GERMAINE R. BRYANT,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 4-13-CR-40042-JPG-1 — **J. Phil Gilbert**, *Judge.*

SUBMITTED MAY 21, 2014 — DECIDED JUNE 12, 2014

Before POSNER, FLAUM, and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant pleaded guilty to a federal drug offense and was sentenced to 144 months in prison (a below-guidelines sentence—his guidelines range was 188 to 235 months). His lawyer has filed an *Anders* brief to which the defendant has not responded, though invited to do so. The brief persuasively demonstrates the absence of any nonfrivolous ground for challenging the 144-month sen-

tence. (There is no indication that the defendant wants to withdraw his guilty plea.)

The brief states that the defendant "may wish to raise the issue of ineffective assistance of counsel" at sentencing, but immediately adds that since the author of the brief was also the defendant's lawyer at sentencing "the issue of ineffectiveness is not appropriate for direct appeal." True. A claim of ineffective assistance need not, and usually as a matter of prudence should not, be raised in a direct appeal, where evidence bearing on the claim cannot be presented and the claim is therefore likely to fail even if meritorious. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003); *United States v. Wallace*, 2014 WL 1978408, at *4 (7th Cir. May 16, 2014); *United States v. Fareri*, 712 F.3d 593, 595 (D.C. Cir. 2013).

We are surprised that apart from the sentence itself—both the written version, which lists the conditions of supervised release imposed on the defendant, and the judge's oral sentencing statement, which mentions a few of them—the only reference in the trial or appellate record to supervised release is an occasionally repeated statement that the term of supervised release is three years. The presentence report contains no recommendations concerning the conditions. Although the probation officer who prepares the report also prepares a separate document entitled "Sentencing Recommendation," which includes recommended conditions of supervised release, the district court is authorized to conceal the recommendations from the defendant and his lawyer, Fed. R. Crim. P. 32(e)(3). The U.S. District Court for the Southern District of Illinois has directed its judges to do so, S.D. Ill. Local Rule Cr32.1(b), and it was done in this case. (The reason for such secrecy, as noted in *United States v. Pe-*

*terson*, 711 F.3d 770, 776 and n. 2 (7th Cir. 2013), is "to allow probation officers the opportunity to provide a candid assessment of the defendant to the court and to protect the effectiveness of the probation officer in the supervisory context," though in some districts—the Northern District of Illinois, for example—the probation office is structured to assign a different probation officer to supervise the defendant when he's released from the officer who prepared the sentencing recommendation.) *Factual* information in the probation officer's recommendation must be disclosed to the defendant, however. See Fed. R. Crim. P. 32(i)(1)(B); also 1974 Advisory Committee Notes to Fed. R. Crim. P. 32; *United States v. Godat*, 688 F.3d 399, 401 (8th Cir. 2012); *United States v. Baldrich*, 471 F.3d 1110, 1113–15 (9th Cir. 2006).

But not knowing the recommendation itself may make it difficult for the defendant to mount an effective challenge to it. Although some conditions of supervised release are mandatory, see 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a), and others, though not mandatory, are "standard," §§ 5D1.3(b)–(c), still others—which like the standard conditions are found in the sentencing guidelines rather than in the Sentencing Reform Act, and are called "special conditions" of supervised release, §§ 5D1.3(d)–(e), recommended for particular offenses—are not exhaustive. 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(b); *United States v. Angle*, 598 F.3d 352, 360–61 (7th Cir. 2010); *United States v. Daddato*, 996 F.2d 903, 904 (7th Cir. 1993); *United States v. Sicher*, 239 F.3d 289, 292–93 (3d Cir. 2000). Sentencing judges can impose special conditions of their own devising, provided the conditions comply with overall federal sentencing policy as stated in 18 U.S.C. § 3553(a), especially subsection (a)(2).

As emphasized in *United States v. Siegel*, 2014 WL 2210762, at *1–2, 5–7 (7th Cir. May 29, 2014), a district judge is required to give a reason, consistent with the sentencing factors in section 3553(a), for every discretionary part of the sentence that the judge is imposing, including any non-mandatory conditions of supervised release. The judge in this case gave no reasons for imposing the 13 (of the 15 possible) standard conditions that he imposed on the defendant.

He did give reasons for imposing 4 of the 7 special conditions. The written sentence lists 8 "special conditions," but one was actually a mandatory condition—that the defendant was to "cooperate in the collection of DNA as directed by the probation officer." 18 U.S.C. § 3583(d); U.S.S.G. § 5D1.3(a)(8). (The judge had, however, correctly called it a mandatory condition at the sentencing hearing.) Since it was mandatory, no reason needed to be given for its imposition. Another of the 7, as we'll see, was not a condition of supervised release at all.

The special conditions that the judge gave reasons for (we italicize the reasons for clarity) were first, that "*due to your substance abuse history*, you shall participate as directed and approved by the probation officer in treatment for narcotic addiction, drug dependence, or alcohol dependence, which includes urinalysis and/or other drug detection measures, and which may require residence and/or participation in a residential treatment facility or residential reentry center"; second, that "*as you are not educationally or vocationally prepared to enter the workforce*, you shall participate in a program deemed appropriate to improve job readiness skills, which may include participation in a GED program or workforce development program as directed by the

probation officer"; third, that *"based on prior compliance issues during supervision*, the defendant shall submit her [*sic*] person, residence, real property, place of business, computer, electronic communication and data storage device or media, vehicle, and any other property under her [*sic*] control to a search, conducted by the United States Probation Officers … without a warrant"; and fourth, that *"having assessed your ability to pay*, payment of the total criminal monetary penalties shall be paid in equal monthly installments of $10 or 10 percent of your net monthly income, whichever is greater, to commence 30 days after the judgment's been entered in this case."

The fourth condition, however, was not a condition of supervised release, because it was to take effect 30 days after judgment, long before the defendant is scheduled to be released from prison. For prisoners enrolled in the Inmate Financial Responsibility Program, the program determines how prison wages are applied to prisoner debts, and *United States v. Sawyer*, 521 F.3d 792, 795–96 (7th Cir. 2008), holds that judges can't order prison wages to be dedicated to restitution. If that is correct (*Sawyer* acknowledges that most of the other courts of appeals disagree; see *United States v. Corley*, 500 F.3d 210, 225 (3d Cir. 2007), reversed on other grounds, 556 U.S. 303 (2009); *United States v. Gunning*, 401 F.3d 1145, 1150 (9th Cir. 2005); *United States v. Overholt*, 307 F.3d 1231, 1255–56 (10th Cir. 2002); *United States v. Davis*, 306 F.3d 398, 425–26 (6th Cir. 2002); *United States v. McGlothlin*, 249 F.3d 783, 784–85 (8th Cir. 2001); *United States v. Kinlock*, 174 F.3d 297, 300 (2d Cir. 1999); cf. 18 U.S.C. § 3572(d)(1); 18 U.S.C. § 3013(c); AO Form 245B, "Judgment in a Criminal Case"; Federal Bureau of Prisons, "The Federal Bureau of Prisons' Inmate Financial Responsibility Program" (Report

No. I-2000-023, Sept. 2000), www.justice.gov/oig/reports/
BOP/e0023/index.htm.), why shouldn't it be equally true of
fines and special assessments? Nor is it likely that a modest
fine and special assessment (together only $200 in this case)
won't be paid before release. All federal prisoners who are
medically fit are required to work, and the Bureau of Prisons
garnishes their wages to pay off court-imposed fines and
restitution. Federal Bureau of Prisons, "The Federal Bureau
of Prisons' Inmate Financial Responsibility Program," Intro-
duction, *supra*.

The three other special conditions of supervised release
imposed on the defendant, which the judge did not explain,
puzzle us as well. They are, first, that "the defendant shall
provide the probation officer and the Financial Litigation
Unit of the United States Attorney's Office with access to
any requested financial information. The defendant is ad-
vised that the probation office may share financial Infor-
mation with the Financial Litigation Unit." Second, "the de-
fendant shall apply all monies received from income tax re-
funds, lottery winnings, judgments, and/or any other antici-
pated or unexpected financial gains to the outstanding court-
ordered financial obligation. The defendant shall immediate-
ly notify the probation officer of the receipt of any indicated
monies." And third, "the defendant shall notify the United
States Attorney for this District within 30 days of any change
of name, residence, or mailing address until all fines, restitu-
tion, costs and special assessment imposed by this judgment
are fully paid." The puzzle is that the financial obligations
sum, as we said earlier, to a mere $200, an amount bound to
be paid off before this defendant is released. His prison sen-
tence is 12 years and he is to pay $10 a month "from [his]
prison earnings" toward his fine, payment to begin 30 days

after entry of judgment. Even if he pays only $5 a month, he will have paid the entire fine by the end of his first three and a half years in prison.

There is a further question about the third condition—the notification of change of name, residence, etc. The condition is specified in 18 U.S.C. § 3612(b)(1)(F), which however applies only to "a judgment or order imposing … a fine or restitution order of *more than* $100" (emphasis added). 18 U.S.C. § 3612(b)(1). The judge in this case imposed a fine of *exactly* $100 (and no restitution). So the condition is inapplicable as a mandatory statutory condition, though presumably the judge could impose it as a special condition—yet that would be pointless, since as we said the fine and assessment will be paid long before the defendant is released from prison.

The judge explained neither how the standard and special conditions that he was imposing comported with the statutory sentencing factors nor the basis for imposing conditions that are to take effect before the defendant leaves prison.

There is also no indication that any of the conditions were shown to the defendant's lawyer before the judge imposed them, or that the lawyer discussed supervised release with her client. Defendant and lawyer are charged with knowledge of the sentencing guidelines, which list the standard conditions along with a number of special ones. But it is difficult to prepare to respond to every possible condition of supervised release that the judge may impose without any advance notice, given that the judge is empowered to impose special conditions that are not listed in the guidelines, or anywhere else for that matter. We held in *United States v. Scott*, 316 F.3d 733, 735–36 (7th Cir. 2003), that

notice to the defendant is required before the imposition of special conditions of supervised release that are "out of the ordinary, and thus unexpected." There are similar decisions in other circuits. See *United States v. Brown*, 402 F.3d 133, 139 (2d Cir. 2005); *United States v. Wise*, 391 F.3d 1027, 1033 (9th Cir. 2004); *United States v. Barajas*, 331 F.3d 1141, 1144–45 (10th Cir. 2003). No notice was given in this case. It's true that these decisions precede *Irizarry v. United States*, 553 U.S. 708 (2008), which holds that no notice is required if the sentencing judge is thinking merely of imposing a sentence that is a "variance" from the guidelines sentence, which is to say a decision based on the judge's application of the sentencing factors in 18 U.S.C. § 3553(a). The defendant's lawyer should be able to determine the direction in which the sentencing factors are likely to move the sentence. See 553 U.S. at 715–16. But there is no similar source of guidance for the imposition of special conditions—no basis for assuming that the defendant's lawyer will be able to predict what newfangled special condition the judge may come up with. The danger we pointed to in the *Scott* decision—of conditions of supervised release that are "out of the ordinary, and thus unexpected"—was not involved in *Irizarry*.

There are additional problems with the sentencing of the defendant in this case. One is that while at sentencing the judge mentioned six special conditions that he was imposing, the written sentence as we know lists eight. And in two of the conditions the defendant, though a man, is referred to as "she" or "her"—not a good sign. And finally, when the written sentence differs from the oral, the oral takes precedence, Fed. R. Crim. P. 35(c); *United States v. Cephus*, 684 F.3d 703, 709–10 (7th Cir. 2012); *United States v. McHugh*, 528 F.3d 538, 539 (7th Cir. 2008); *United States v. Weathers*, 631 F.3d

560, 561–62 (D.C. Cir. 2011)—and were that rule applied in this case it would eliminate from the defendant's sentence the two special conditions of supervised release that the judge did not mention orally.

All this said, because the attorney did not raise these issues and the defendant did not respond to the *Anders* brief we have no basis for reversing the sentence, as we are given no indication that he wishes to challenge any of the conditions of supervised release. *United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014). He may be indifferent to them, since— apart from those that, on unexplained authority, are to take effect before his release—they won't take effect until his release date, which according to the Bureau of Prisons will be no earlier than June 4, 2023. (The selection of this date was based on the assumption that he will earn the maximum good-time credits authorized by 18 U.S.C. § 3624(b)(1).) He may not weight distant future consequences heavily.

The appeal is therefore dismissed and the lawyer's motion to withdraw from her representation of the defendant is granted.