In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3373

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WALBERT KEITH FARMER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 4:12-cr-00026-TWP-MGN-1 — **Tanya Walton Pratt**, *Judge*.

ARGUED MAY 28, 2014 — DECIDED JUNE 23, 2014

Before FLAUM, MANION, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Defendant-Appellant Walbert Keith
Farmer appeals the district court's imposition of two special
conditions for his three-year term of supervised release: one
prohibiting him from self-employment, and the other requir-
ing him to submit to the search of his person, vehicle, office,
residence, and property at the request of his probation of-
ficer, even without a warrant or reasonable suspicion. Be-
cause we conclude that the special conditions do not bear a

reasonably direct relationship to Farmer's underlying crimes, we vacate the special conditions in question and remand for further consideration.

**I**

In 2012, Farmer received information from a golfing and gambling companion that a man named Walter Allen, an employee at the Horseshoe Casino in Elizabeth, Indiana, had used a company credit card without authorization. Armed with this information, Farmer, utilizing the alias "Jim Taylor," contacted Allen via cellular phone from North Carolina and threatened to reveal the information to the Casino's management unless Allen paid him off. Farmer even reeled in an associate, a female acquaintance who he met in West Virginia and traveled with to Indiana so that she could collect the extortion money from Allen. The scheme unraveled after Allen contacted law enforcement, which apprehended Farmer's female associate and foiled the scheme. Farmer was arrested and indicted. Under a plea agreement, Farmer ultimately petitioned to plead guilty to two counts, violations of 18 U.S.C. §§ 1952(a)(3) and 875(d), for attempting to extort Allen and using interstate communications in the execution of his plot.

The district court scheduled a single hearing for the acceptance of the plea and sentencing. A presentence investigation report ("PSR") was prepared prior to the hearing, and detailed Farmer's background and criminal history. The report stated in general terms that Farmer had been self-employed since 2002 and had sold sports schedules and related marketing products. How financially successful Farmer was at this endeavor was unclear: he reported earning approximately $500-$700 a month, but had reported only

$1,203 of income to the government for the period between 2002 and 2012. Farmer's criminal history was more clear: he had five prior felony convictions, including a 2003 conviction for using interstate communications to transmit extortionate threats, three convictions for obtaining property by false pretenses (apparently filed by disgruntled customers of his sports-schedule business), and one conviction for larceny relating to the fraudulent purchase of a golf cart. Neither the PSR nor any document disclosed to the parties included information about the conditions of supervised release that the Probation Service intended to recommend to the district court.

Farmer was sentenced to incarceration for 22 months, to be followed by three years of supervised release. As part of the sentencing, the district court announced the conditions of supervised release, recommended by the probation service and adopted by the court, including the requirement that

> The defendant shall submit to the search, with the assistance of other law enforcement as necessary, of his person, vehicle, office, business, and residence, and property, including computer systems and peripheral devices. The defendant shall submit to the seizure of any contraband found and shall warn other occupants that the premises may be subject to searches.

After enumerating the initial set of supervised release conditions, the court stated, "Counsel, those are the reasons the Court intends to impose the sentence as stated. Is there any legal reason, other than those already argued, why sentence should not be imposed as stated? Government?" The

Government then raised two additional suggested conditions of supervised release, one of which was to bar Farmer from self-employment during his term of supervised release. The district court then turned to Farmer's counsel to ask for any objections (apparently regarding the Government's two suggested conditions, not the conditions at large), at which point counsel objected that "I don't think this Court should restrict his ability to earn a living. If he wants to be an entrepreneur and be in business for himself, he ought to be able to do that." The district court overruled that objection and did not return to Farmer's counsel to solicit objections to the first set of supervised release conditions. Instead, the district court said "those are the conditions of supervised release," and shortly thereafter reiterated that "the Court is going to impose the sentence as stated." After imposing sentence, the court queried "Anything else?" to which both parties responded in the negative.

Farmer filed a timely appeal.

## II

### A. Supervised Release Conditions Generally

"Apart from a handful of conditions required by the Sentencing Reform Act itself, conditions of supervised release are discretionary." *United States v. Siegel*, Nos. 13-1633, 13-1640, 13-1767, --- F.3d ----, 2014 WL 2210762, at *1 (7th Cir. May 29, 2014) (citations omitted). Some of the discretionary conditions are "standard," found in the sentencing guidelines, U.S.S.G. § 5D1.3(c); and still others are "special conditions" that are imposed for particular offenses. § 5D1.3(d)–(e). *Id.* While the sentencing guidelines list some conditions that are recommended for particular offenses, the list is "not

intended to be exhaustive; sentencing judges can impose conditions of their own devising." *Siegel*, 2014 WL 2210762 at *1. Be that as it may, all conditions must "comply with overall federal sentencing policy as stated in 18 U.S.C. § 3553(a), especially subsection (a)(2), which requires the judge to consider 'the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.'" *Id*. "[A] district judge is required to give a reason, consistent with the sentencing factors in section 3553(a), for every discretionary part of the sentence that the judge is imposing, including any non-mandatory conditions of supervised release." *United States v. Bryant*, --- F.3d ---, No. 13-3845, 2014 WL 2612349, at *2 (7th Cir. June 12, 2014).

### B. Disclosure of Special Conditions

We briefly pause to express our concern that the parties were not privy to the conditions of supervised release suggested by the probation office prior to the hearing. "Although the probation officer who prepares the [PSR] also prepares a separate document entitled 'Sentencing Recommendation,' which includes recommended conditions of supervised release, the district court is authorized to conceal the recommendations from the defendant and his lawyer." *Bryant*, 2014 WL 2612349, at *1 (citing Fed. R. Crim. P. 32(e)(3)). The Sentencing Recommendation in this case, which comprised the first set of supervised release condi-

tions announced by the district court, was designated as confidential under the Southern District of Indiana's Local Criminal Rule 13.1(c) ("The sentencing recommendation provided to the court by the probation office will not be disclosed except to the court."). When asked at oral argument, both counsel stated that they had not seen this document. We recognize that Federal Rule of Criminal Procedure 32(e)(3) permits this confidentiality in certain circumstances, particularly to "allow probation officers the opportunity to provide a candid assessment of the defendant to the court and to protect the effectiveness of the probation officer in the supervisory context." *Bryant*, 2014 WL 2612349, at *1 (quoting *United States v. Peterson*, 711 F.3d 770, 776 and n.2 (7th Cir. 2013)). However, the Rule requires that "*[f]actual* information in the probation officer's recommendation must be disclosed to the defendant." *Id.* (citing Fed. R. Crim. P. 32(i)(1)(B)). And, as a matter of policy, "not knowing the recommendation itself may make it difficult for the defendant to mount an effective challenge to it." *Id.* at *2. Certainly, "[d]efendant and lawyer are charged with knowledge of the sentencing guidelines, which list the standard conditions along with a number of special ones," but it is almost impossible "to prepare to respond to every possible condition of supervised release that the judge may impose without any advance notice, given that the judge is empowered to impose special conditions that are not listed in the guidelines or anywhere else for that matter." *Id.* at *4. And it seems problematic to conclude that the defendant waives objections to special conditions if he does not properly confront conditions presented for the first time at the sentencing hearing. For this reason and others, we recommend that sentencing judges follow the best practices outlined in *Siegel* when

imposing conditions of supervised release, particularly the suggestion that judges "[r]equire the probation service to communicate its recommendations for conditions of super-vised release to defense counsel at least two weeks before the sentencing hearing." *Siegel*, 2014 WL 2210762, at *11.

## C. Special Condition 4 (The Search Condition)

### 1. Standard of Review

Before we proceed to review the condition on its merits, we must first determine the proper standard of review. The Government argues that because Farmer did not raise an objection despite the district court's general "anything else?" query at the end of sentencing, he waived his objection to the special condition and the condition is unreviewable. However, Farmer neither explicitly approved the search condition, *cf. United States v. O'Malley*, 739 F.3d 1001, 1007 (7th Cir. 2014) (holding that an affirmative statement of no objection constitutes waiver), nor had a strategic reason to forego the argument at the hearing, *cf. United States v. Allen*, 529 F.3d 390, 395 (7th Cir. 2008) ("If a specific objection was not raised at sentencing, we will view it as having been waived if the defendant had a strategic reason to forego the argument, that is, only if the defendant's counsel would not be deficient for failing to raise the objection."). And Farmer's response to the district court's general query of whether there was "anything else"—a query that came *after* the statement that the court was imposing sentence—cannot constitute waiver.

Even so, there is some question as to whether the objection to the search condition was forfeited because of Farmer's silence at the hearing and should be reviewed for

plain error, or whether it should be reviewed for an abuse of discretion because there was no opportunity for Farmer to object before the sentence was imposed. (As we note above, "not knowing [the Probation Service's] recommendation [for supervised release terms] . . . may make it difficult for the defendant to mount an effective challenge to it." *Bryant*, 2014 WL 2612349, at *2.) We have "recognized some tension in our cases as to the proper standard of review in these circumstances." *United States v. Shannon*, 743 F.3d 496, 499 (7th Cir. 2014) (detailing the conflict between our cases that have reviewed for plain error where a defendant did not "object" to a "judicial choice after it ha[d] been made" and cases where we reviewed for abuse of discretion because of the potential lack of notice to the defendants regarding the court's impending filing of its sentencing order); *see also United States v. Goodwin*, 717 F.3d 511, 522–23 (7th Cir. 2013) (noting the conflict between cases like *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009), and *United States v. Courtland*, 642 F.3d 545, 547 (7th Cir. 2011), but reasoning that "[w]e need not resolve whether plain-error review . . . or review for abuse of discretion . . . applies in these circumstances, since we find that the special conditions must be vacated under either standard").

As in *Shannon* and *Goodwin*, we leave for another day the decision on the proper standard of review, as the outcome here is the same regardless of the standard used.

## 2. The District Court's Lack of Explanation

We note that the district court did not give a reason for imposing the search condition. *See* Transcript of Plea and Sentencing and Competency Hearing, United States v. Farmer, No. 4:12-cr-00026 (S.D. Ind. Nov. 14, 2013), ECF No.

84, at 52 (imposing search condition without explanation). Farmer contends that the search condition appears to be a standard condition suggested by the Probation Service of the Southern District of Indiana, claiming to have found it imposed in 39 of 42 cases examined in that court—a statistic not disputed by the government. The search condition is a broad restriction that requires him to submit to searches of his person, car, place of business, residence, computer, and other property, with no requirement that the entity conducting the search have any suspicion to justify the search. The searches may be conducted just by a probation officer, but also with the assistance of law enforcement. Farmer is also subject to the "seizure of any contraband found" during these searches. The scope of this search clause is broader even than the explicit searches that the sentencing guidelines authorize for the purpose of monitoring sex offenders: the latter provision requires reasonable suspicion that the defendant has violated a condition of supervised release as a prerequisite for the search, whereas the search condition to which Farmer is subject requires no suspicion, reasonable or otherwise, to trigger a search. *See* 18 U.S.C. § 3583(d)(3) (authorizing a court to order, as an explicit condition of supervised release, that a person and his property submit to search "by any law enforcement or probation officer *with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person*") (emphasis added); U.S.S.G. § 5D1.3(d)(7)(C) (recommending as a special condition of supervised release for sex offenders "[a] condition requiring the defendant to submit to a search, at any time, with or without a warrant . . . *upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant*") (emphasis added).

"[W]e are . . . at a loss to see how this broad search and seizure authority is connected to [Farmer's] offense, history, and personal characteristics, or how it is reasonably necessary to furthering the deterrence, public protection, and rehabilitative goals articulated in 18 U.S.C. § 3583(d)(2)." *Goodwin*, 717 F.3d at 523. The record does not indicate that contraband played any role in Farmer's current or past offenses. "Although we stop short of stating that such restrictions could never be appropriate in these circumstances, our skepticism leads us to conclude that the district court must provide some justification for these particular conditions." *Id.* The error here is not harmless, because the consistency of this condition with the statutory sentencing factors is far from plain: it is difficult to identify how this search condition is reasonably related to the nature of the offense, the characteristics of the defendant, or the need to deter, protect the public, or provide the defendant with rehabilitation. *See* 18 U.S.C. §§ 3583(d)(1), 3553(a); *cf. Siegel*, 2014 WL 2210762 at *7 (holding that a district court that did not give reasons for a condition it was imposing committed harmless error if "[t]he consistency of that condition with the statutory sentencing factors is plain, given the nature of [the underlying] crime").

Accordingly, we vacate this condition of supervised release and remand for further consideration consistent with this opinion.

### D. Special Condition 5 (The Self-Employment Ban)

There is additional statutory authority that applies in the case of the self-employment ban. The statutory provision providing a partial list of discretionary conditions, 18 U.S.C. § 3563(b)(5), states that a defendant can be ordered to "re-

frain . . . from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or to engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances." The sentencing guidelines implementing this condition provide that "[o]ccupational restrictions may be imposed as a condition of supervised release," U.S.S.G. § 5D1.3(e)(4), and that such a restriction may be imposed by a court

only if it determines that:

> (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

> (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

U.S.S.G. § 5F1.5(a). In other words, the statutory provision and sentencing guidelines make clear that an occupation restriction requires a nexus between the underlying offense of conviction and the occupational ban. All three clauses are consistent in requiring the connection between the conduct constituting the offense and the occupation being restricted.

The district court gave some brief explanation for the self-employment ban, first raising its own concern about

Farmer's spotty employment and tax payment history, and then adopting the government's suggestion of a self-employment ban, raised for the first time at the hearing. *See* Transcript of Plea and Sentencing and Competency Hearing, United States v. Farmer, No. 4:12-cr-00026 (S.D. Ind. Nov. 14, 2013), ECF No. 84, 54–55 (discussing Farmer's self-employment over the past ten years), 57–59 (discussing with the parties, then imposing, a prohibition on self-employment, on the basis that Farmer "hasn't paid anything into Social Security other than $1,200" and that the requirement that he "start working and get[] a paycheck and pay[] taxes and become a good citizen" may rid Farmer of "that temptation to con people"). However, the district court's explanation did not provide the necessary nexus between Farmer's underlying crime—attempted extortion—and the self-employment ban. The district court did not determine that Farmer's activities as a self-employed entrepreneur caused him to attempt to extort Walter Allen. The court's explanation focused instead on its belief that Farmer's lack of success as an entrepreneur was causing him to turn to con activities to fund himself: perhaps not an incorrect conjecture, but one that is insufficient to meet the requirement that the occupation being restricted or banned "bear a reasonably direct relationship" to the "conduct relevant to the offense of conviction." U.S.S.G. § 5F.15(a); *cf. United States v. Wittig*, 528 F.3d 1280, 1288 (10th Cir. 2008) (reasoning, on the basis of the relevant statute and guidelines, that a court that did not explain how the occupational restriction related to the offense of conviction had erred, and that "[t]he mere fact [Defendant] engaged in such conduct while employed as an executive does not establish the necessary connection between the conduct and his management/executive positions"). The

court also noted Farmer's spotty tax payment history, stating: "He hasn't paid anything into Social Security other than $1,200. He's 48 years old. He's going to have nothing paid in as he becomes a senior citizen." But Farmer's offense of conviction is extortion rather than a tax offense. Farmer's age and status with regard to Social Security seem irrelevant to whether there was a "reasonably direct relationship" between his extortionate activities and his self-employment.

Because the district court's explanation did not satisfy the requirements of 18 U.S.C. § 3583(d) and U.S.S.G. §§ 5D1.3(e)(4), 5F1.5(a), we also vacate this special condition and remand for further consideration.

## III

We VACATE special conditions 4 and 5 of Farmer's terms of supervised release and REMAND for further proceedings consistent with this opinion.