In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 14-1354

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GREGORY J. PHILLIPS

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 03-cr-40-bbc-1 — **Barbara B. Crabb**, *Judge.*

---

No. 14-3096

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHAON ARCH,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 10-cr-175-bbc-1 — **Barbara B. Crabb**, *Judge.*

_____

ARGUED JANUARY 27, 2015 — DECIDED JUNE 26, 2015

_____

Before POSNER, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Gregory Phillips and Shaon Arch violated the conditions of their supervised release and were returned to court for revocation proceedings. The district judge sent them back to prison based in part on the need to "hold [them] accountable for [their] actions." Although their cases are otherwise unrelated, they raise the same issue on appeal, so we have consolidated them for decision. The defendants argue that because "accountability" is not a factor listed in the revocation statute, *see* 18 U.S.C. § 3583(e), the judge committed reversible procedural error. We reject this argument and affirm.

## I. Background

In late 2012 Phillips was released from prison and began a five-year period of supervision in the Western District of Wisconsin.[1] He soon violated his release conditions in multiple ways. He used marijuana; he attempted to dilute a urine sample; and he left the judicial district without his probation officer's permission. The probation officer enrolled him in sweat-patch testing to more closely monitor his drug use. During the next several months, Phillips again traveled

---

[1] He served 132 months for possessing cocaine base with intent to distribute. *See* 21 U.S.C. § 841(a)(1).

outside the district without permission. He also tested positive for drug use three times (twice for cocaine and once for opiates) and repeatedly failed to comply with sweat-patch testing. Finally, he associated with a person engaged in criminal activity. Based on these violations, in late 2013 the district court issued a warrant for Phillips's arrest. He evaded apprehension for several months.

When Phillips was finally arrested, District Judge Barbara Crabb held a revocation hearing, at which Phillips stipulated to the charged violations. The guidelines recommended reimprisonment for 12 to 18 months. *See* U.S.S.G. § 7B1.4(a). Phillips argued for the bottom of the range, noting that he was steadily employed during supervision and was actively involved in his children's lives. He also explained that he had evaded arrest because he wanted to be with his wife for the birth of their daughter.

Judge Crabb revoked Phillips's supervision and returned him to prison for 24 months, six months above the top of the range. She acknowledged that he had "work[ed] hard" to maintain employment while on supervision, but concluded that he "thr[e]w it away," along with an opportunity to be with his wife and young children, by repeatedly violating the conditions of his supervision. She also noted that Phillips received a "break" when his original prison sentence was substantially reduced based on subsequent changes to the sentencing guidelines. *See* 18 U.S.C. § 3582(c)(2) (authorizing the court to modify a sentence of imprisonment when the original sentence was based on a guidelines range that is subsequently lowered by the Sentencing Commission). Summing up, the judge said the reimprisonment term was

meant to "hold you accountable for your actions and protect the community."

In August 2014 Arch was released from prison and began a three-year term of supervision, also in the Western District of Wisconsin.[2] Like Phillips, he soon violated the terms of his supervision. Because Arch did not have a place to live when he was released from prison, his probation officer took him to a homeless shelter and told him not to leave the facility. Arch left the shelter that same day and was arrested a few hours later. He was released with instructions to return to the shelter. He did so but soon disappeared again and left Wisconsin. He was arrested in Illinois after assaulting two of his sisters. At the time of his arrest, Arch smelled strongly of alcohol and possessed an open bottle of liquor.

For this conduct Arch was charged with several violations of supervised release: disobeying his probation officer's instructions, committing another crime, leaving the judicial district without permission, and using alcohol. Judge Crabb revoked Arch's supervision and ordered him reimprisoned for a within-guidelines term of 12 months. The judge emphasized that Arch had proven "impossible" to supervise and posed a "great danger" to others based on the attack on his sisters. She also noted that Arch had "very serious mental health problems" and had "refused to comply with any treatment." Finally, as in Phillips's case, the judge cited the need to "hold [Arch] accountable for [his] actions and protect the community."

---

[2] He served 27 months for possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1).

## II. Discussion

The defendants argue that Judge Crabb committed procedural error by relying on the need for "accountability," a factor not enumerated in § 3583(e), the statute that governs revocation decisions. We disagree.

Section 3583(e) gives the sentencing judge several tools to deal with offenders who violate the terms of their supervised release. As relevant here, the statute permits the court to revoke supervision and order the violator reimprisoned after considering a subset of the factors set forth in § 3553(a), the general sentencing statute.[3] The need to hold the defendant accountable is not listed.

But accountability is an obvious concern whenever an offender has violated the conditions of supervised release—so obvious that it may not tell us much about the judge's rationale for the revocation decision. Even so, there's nothing improper about considering it. To the contrary, an offender who violates the conditions of supervised release commits a "breach of trust," and revocation is primarily aimed at sanctioning that breach. U.S.S.G. ch. 7, pt. A, introductory cmt. 3(b) (emphasizing the "breach of trust" ra-

---

[3] Specifically, the statute provides that

> [t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) … revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release, … if the court … finds by a preponderance of the evidence that the defendant violated a condition of supervised release.

18 U.S.C. § 3583(e)(3).

tionale for revocation policy); *see United States v. Clay*, 752 F.3d 1106, 1109 (7th Cir. 2014) (explaining that a judge's remarks about "just punishment" properly "describe a sanction that conveys the importance of obeying conditions of supervised release" (internal quotation marks omitted)); *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011); *United States v. Young*, 634 F.3d 233, 241 (3d Cir. 2011); *United States v. Miqbel*, 444 F.3d 1173, 1182 (9th Cir. 2006).

To the extent the defendants are arguing that the list of factors in § 3583(e) is exclusive, they are mistaken. In *United States v. Clay*, we held that a district court may consider the factors listed in subsection (a)(2)(A) of § 3553—the seriousness of the offense, respect for the law, and just punishment—even though those factors are not mentioned in § 3583(e), as long as the court "relies primarily on the factors listed in § 3583(e)." 752 F.3d at 1108–09; *see Young*, 634 F.3d at 240–41 n.3. Broadly speaking, the § 3583(e) factors include the nature of the offense, the defendant's history and characteristics, the need for deterrence and public protection, the defendant's educational and treatment needs, and the guidelines and policy statements of the Sentencing Commission. *See* § 3583(e) (cross-referencing § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)).

The judge considered these factors here, albeit in summary fashion. In both cases the judge began by correctly calculating and considering the reimprisonment range recommended by the guidelines. Opting for a longer term in Phillips's case, the judge specifically relied on the need to protect the public as well as Phillips's poor compliance history on supervision and the fact that his original prison sentence had been substantially reduced, which the judge

characterized as a "break" that enabled him to be reunited with his family sooner than expected. She also acknowledged his "hard work" in holding a job after being released, but emphasized that he "thr[e]w it away" by repeatedly violating the conditions of his supervision. The judge's reliance on accountability as an added justification for the 24-month term fits comfortably under the general heading of "deterrence" and was not improper.

As for Arch, the judge settled on a within-guidelines term of reimprisonment of 12 months. She specifically emphasized the need to protect the public (recall that Arch attacked his sisters after absconding from supervision). She also noted Arch's unwillingness to abide by his probation officer's directions, his "very serious mental health problems," and his "refus[al] to comply with any treatment." Here again, adding accountability to the mix was not improper.

Finally, Phillips maintains that the judge did not adequately explain her choice of a 24-month term of reimprisonment, six months above the top of the advisory range. When imposing an above-guidelines prison term, a sentencing court need not explain why a within-range sentence would be insufficient, *see United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013); *United States v. Courtland*, 642 F.3d 545, 550 (7th Cir. 2011); *United States v. Bartlett*, 567 F.3d 901, 909 (7th Cir. 2009), but the judge must justify the sentence in light of the statutory sentencing factors and any relevant policy statements in the guidelines, *see United States v. Robertson*, 648 F.3d 858, 859–60 (7th Cir. 2011).

The judge's comments here were sparse, but they were sufficient. As we've already explained, the judge correctly

noted the reimprisonment range recommended by the guidelines (12 to 18 months) as well as the relevant statutory factors, including Phillips's history and characteristics, the need to protect the public, and (broadly speaking) the need for deterrence. And because the judge chose an imprisonment term fairly close to the top of the suggested range and three years below the statutory maximum, extensive explanation was not required. *See Gall v. United States*, 552 U.S. 38, 50 (2007); *United States v. Jones*, 774 F.3d 399, 405 (7th Cir. 2014).

AFFIRMED.

POSNER, *Circuit Judge*, concurring and dissenting. I agree with the majority's decision in Arch's appeal, but I would reverse Phillips's sentence, and will limit my discussion accordingly. The errors in the majority opinion that I will be discussing with reference only to Phillips spill over into its analysis of Arch, but in the case of Arch they are harmless; in the case of Phillips they are not.

Phillips's case is another illustration of the difficulty, discussed in several of our recent cases, see *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015); *United States v. McMillian*, 777 F.3d 444 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015); *United States v. Bryant*, 754 F.3d 443 (7th Cir. 2014); *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014)—none cited in the majority opinion in this case—that a number of federal district judges in this circuit are having with supervised release. The district court's handling of the case was inconsistent with these opinions, and so is the affirmance of Phillips's sentence.

Phillips was convicted in 2003 of conspiracy to distribute cocaine and ultimately sentenced to 132 months in prison. (That was a resentence—his original sentence had been a staggering 262 months.) He served a total of 118 months of his 132-month sentence. Soon after being released in 2012, he began violating several conditions of supervised release that the sentencing judge had imposed—using marijuana, attempting to dilute a urine sample in order to conceal his use of illegal drugs from his probation officer, and leaving the judicial district without the officer's permission. Out of concern for the defendant's continued use of illegal drugs, the probation officer ordered him to wear a "sweat patch." An alternative to urine testing for illegal drug use, a sweat patch

is a small absorbent pad attached to one's arm or back or elsewhere on the body by an adhesive strip. It absorbs small quantities of sweat, which if the person wearing the patch is consuming cocaine or heroin will contain molecules that reveal the drug's presence in the person's body. The patch is removed every week and sent to a laboratory to test for the presence of such molecules.

After being "patched," the defendant within a period of months twice tested positive for illegal drugs, removed the patches other than for the weekly testing (he claimed without contradiction that they irritated his skin), again traveled outside the judicial district without permission, and associated with a person engaged in criminal activity. Eventually—roughly a year after the defendant's release from prison—the district court issued a warrant for his arrest for violation of supervised release, and he was arrested after eluding arrest for several more months. Despite his violations he had maintained steady, gainful employment during his supervised release, had maintained a normal family life, and claimed that he had evaded arrest just so that he could be with his wife for the birth of their daughter. These claims were not controverted.

The judge ordered that his supervised release be revoked (which was mandatory, though only because one of his violations of supervised release was possession of a controlled substance, 18 U.S.C. § 3583(g)(1)), and that he be imprisoned as punishment for his violations. The guidelines range applicable to his violations was 12 to 18 months, but the judge sentenced him to 24 months (to be followed by 36 months of the same conditions of supervised release that he had been

originally sentenced to), even though the government had recommended a within-guidelines sentence.

The prison sentence imposed by the district judge was unduly severe (the reimposition of the conditions of supervised release for 36 months is not challenged). So far as appears, despite his drug addiction, unauthorized trips outside the judicial district, and associating with a criminal, he led a normal life, with a wife and children and steady, gainful, lawful employment. He had life insurance, health insurance, and even dental insurance. He had been able to afford to buy his kids fishing poles and take them fishing. To stick him in prison for two years is bound to endanger both the stability of his family life and his ability to maintain lawful employment. His violations of supervised release were minor from the standpoint of protecting the community. Many drug addicts live quite normal lives; he seems to be one of them. There was nothing sinister about his unauthorized trips outside the Western District of Wisconsin—they were to Minnesota, where his mother lives—or his association with a criminal, a woman whom he drove to Minnesota, where she applied for government assistance without being entitled to it. The defendant claimed not to know that the woman was engaged in welfare fraud, and the government does not contend that he did know. To associate with a person who is a criminal but whom one does not know to be a criminal can hardly be thought a violation of supervised release. See *United States v. Thompson, supra*, 777 F.3d at 377, 380; *United States v. Phillips,* 704 F.3d 754, 767–68 (9th Cir. 2012). And apparently the sweat patches that the defendant removed from his skin really were very irritating, for they left lesions on his back.

The most serious error committed by the district judge—a reversible error overlooked in the majority opinion—is the judge's failure to apply the statutory sentencing factors in 18 U.S.C. § 3553(a), specifically those in subsection (2) ("the need for the sentence imposed"). Our recent cases emphasize that application of the factors is a *requirement* in determining what conditions of supervised release to impose, not an option. See *United States v. Kappes*, *supra*, 782 F.3d at 845; *United States v. Bryant*, *supra*, 754 F.3d at 444–45; *United States v. Siegel*, *supra*, 753 F.3d at 707. The Justice Department now acknowledges this by requesting remands in appeals in which the requirement is overlooked. See, e.g., *United States v. Miller*, 782 F.3d 793, 803 (7th Cir. 2015). (None of these cases is cited in the majority opinion in the present case.) Ignoring the requirement is a reversible error. Application of the sentencing factors is likewise required in deciding on the punishment for violating a condition of supervised release, *United States v. Boultinghouse*, 784 F.3d 1163, 1177–79 (7th Cir. 2015)—for the punishment, just like the imposition of conditions of supervised release, is a sentence, and unless a sentence is specified by Congress, the sentencing judge must before imposing it consider its conformity to the section 3553(a) factors. That was not done in this case, and the majority opinion allows the error, though it is a reversible error, to pass.

After hearing from the lawyers and the defendant, the district judge addressed the defendant as follows: "You did work hard. The fact that you could work that long at the fast food place and then get a job at Ashley Furniture, I mean you really had things going for you. You were set. I mean there are all kinds of people I know that haven't had that kind of success after getting out of prison. And then to throw

it away. … I'm going to impose a sentence slightly—well, quite a bit above the guidelines range. The intent of this sentence it [she must have meant 'is'] to hold you accountable for your actions and protect the community." And that's it, so far as compliance with the requirement that a sentencing judge justify the sentence imposed. To repeat, the judge did not cite 18 U.S.C. § 3553(a) or mention the sentencing factors listed in it, unless "protect the community" can be considered one. Cf. § 3553(a)(2)(C). Yet the defendant does not appear to be a threat to the community. And the judge gave no reason at all for imposing an above-guidelines sentence, which as I noted the government had not requested.

The judge's reference to "accountability" is difficult to understand. A defendant cannot be convicted, let alone sentenced, for conduct for which he is not accountable. That is a precondition of punishment rather than a prescription for severity.

I am distressed, finally, by the district judge's appearing to base the harsh sentence on the fact that the defendant "really had things going for" him, unlike so many ex-cons. The implication is that he is being punished extra-severely for being able to do, and doing, what so many former convicts, especially those who like him have served long prison sentences, are unable to do after being released—maintain an intact family and obtain decent employment (which of course go hand in hand). The sentence jeopardizes both of the defendant's achievements. As a result of spending two more years in prison, he is likely to lose his job and opportunities for future gainful employment; he may lose his family.

The judge failed to articulate a rational basis for imposing an above-guidelines sentence. The sentence she imposed should be reversed.