POSNER, Circuit Judge,
concurring and dissenting.
I agree with the majority’s decision in Arch’s appeal, but I would reverse Phillips’s sentence, and will limit my discussion accordingly. The errors in the majority opinion that I will be discussing with reference only to Phillips spill over into its analysis of Arch, but in the case of Arch they are harmless; in the case of Phillips they are not.
Phillips’s case is another illustration of the difficulty, discussed in several of our recent cases, see United States v. Kappes, 782 F.3d 828 (7th Cir.2015); United States v. McMillian, 111 F.3d 444 (7th Cir.2015); United States v. Thompson, 111 F.3d 368 (7th Cir.2015); United States v. Bryant, 754 F.3d 443 (7th Cir.2014); United States v. Siegel, 753 F.3d 705 (7th Cir.2014)— none cited in the majority opinion in this case — that a number of federal district judges in this circuit are having with supervised release. The district court’s handling of the case was inconsistent with these opinions, and so is the affirmance of Phillips’s sentence.
Phillips was convicted in 2003 of conspiracy to distribute cocaine and ultimately sentenced to 132 months in prison. (That was a resentence — his original sentence had been a staggering 262 months.) He served a total of 118 months of his 132-month sentence. Soon after being released in 2012, he began violating several conditions of supervised release that the sentencing judge had imposed — using marijuana, attempting to dilute a urine sample in order to conceal his use of illegal drugs from his probation officer, and leaving the judicial district without the officer’s permission. Out of concern for the defendant’s continued use of illegal drugs, the probation officer ordered him to wear a “sweat patch.” An alternative to urine testing for illegal drug use, a sweat patch is a small absorbent pad attached to one’s arm or back or elsewhere on the body by an adhesive strip. It absorbs small quantities of sweat, which if the person wearing the patch is consuming cocaine or heroin will contain molecules that reveal the drug’s presence in the person’s body. The patch is removed every week and sent to a laboratory to test for the presence of such molecules.
After being “patched,” the defendant within a period of months twice tested positive for illegal drugs, removed the patches other than for the weekly testing (he claimed without contradiction that they *703 irritated his skin), again traveled outside the judicial district without permission, and associated with a person engaged in criminal activity. Eventually — roughly a year after the defendant’s release from prison — the district court issued a warrant for his arrest for violation of supervised release, and he was arrested after eluding arrest for several more months. Despite his violations he had maintained steady, gainful employment during his supervised release, had maintained a normal family life, and claimed that he had evaded arrest just so that he could be with his wife for the birth of their daughter. These claims were not controverted.
The judge ordered that his supervised release be revoked (which was mandatory, though only because one of his violations of supervised release was possession of a controlled substance, 18 U.S.C. § 3583(g)(1)), and that he be imprisoned as punishment for his violations. The guidelines range applicable to his violations was 12 to 18 months, but the judge sentenced him to 24 months (to be followed by 36 months of the same conditions of supervised release that he had been originally sentenced to), even though the government had recommended a within-guidelines sentence.
The prison sentence imposed by the district judge was unduly severe (the reimpo-sition of the conditions of supervised release for 36 months is not challenged). So far as appears, despite his drug addiction, unauthorized trips outside the judicial district, and associating with a criminal, he led a normal life, with a wife and children and steady, gainful, lawful employment. He had life insurance, health insurance, and even dental insurance. He had been able to afford to buy his kids fishing poles and take them fishing. To stick him in prison for two years is bound to endanger both the stability of his family life and his ability to maintain lawful employment. His violations of supervised release were minor from the standpoint of protecting the community. Many drug addicts live quite normal lives; he seems to be one of them. There was nothing sinister about his unauthorized trips outside the Western District of Wisconsin — they were to Minnesota, where his mother lives — or his association with a criminal, a woman whom he drove to Minnesota, where she applied for government assistance without being entitled to it. The defendant claimed not to know that the woman was engaged in welfare fraud, and the government does not contend that he did know. To associate with a person who is a criminal but whom one does not know to be a criminal can hardly be thought a violation of supervised release. See United States v. Thompson, supra, 777 F.3d at 377, 380; United States v. Phillips, 704 F.3d 754, 767-68 (9th Cir.2012). And apparently the sweat patches that the defendant removed from his skin really were very irritating, for they left lesions on his back.
The most serious error committed by the district judge — a reversible error overlooked in the majority opinion — is the judge’s failure to apply the statutory sentencing factors in 18 U.S.C. § 3553(a), specifically those in subsection (2) (“the need for the sentence imposed”). Our recent cases emphasize that application of the factors is a requirement in determining what conditions of supervised release to impose, not an option. See United States v. Kappes, supra, 782 F.3d at 845; United States v. Bryant, supra, 754 F.3d at 444-45; United States v. Siegel, supra, 753 F.3d at 707. The Justice Department now acknowledges this by requesting remands in appeals in which the requirement is overlooked. See, e.g., United States v. Miller, 782 F.3d 793, 803 (7th Cir.2015). (None of these cases is cited in the majority opinion in the present case.) Ignoring the requirement is a reversible *704 error. Application of the sentencing factors is likewise required in deciding on the punishment for violating a condition of supervised release, United States v. Boultinghouse, 784 F.3d 1163, 1177-79 (7th Cir.2015)-for the punishment, just like the imposition of conditions of supervised release, is a sentence, and unless a sentence is specified by Congress, the sentencing judge must before imposing it consider its conformity to the section 3553(a) factors. That was not done in this case, and the majority opinion allows the error, though it is a reversible error, to pass.
After hearing from the lawyers and the defendant, the district judge addressed the defendant as follows: “You did work hard. The fact that you could work that long at the fast food place and then get a job at Ashley Furniture, I mean you really had things going for you. You were set. I mean there are all kinds of people I know that haven’t had that kind of success after getting out of prison. And then to throw it away.... I’m going to impose a sentence slightly — well, quite a bit above the guidelines range. The intent of this sentence it [she must have meant ‘is’] to hold you accountable for your actions and protect the community.” And that’s it, so far as compliance with the requirement that a sentencing judge justify the sentence imposed. To repeat, the judge did not cite 18 U.S.C. § 3553(a) or mention the sentencing factors listed in it, unless “protect the community” can be considered one. Cf. § 3553(a)(2)(C). Yet the defendant does not appear to be a threat to the community. And the judge gave no reason at all for imposing an above-guidelines sentence, which as I noted the government had not requested.
The judge’s reference to “accountability” is difficult to understand. A defendant cannot be convicted, let alone sentenced, for conduct for which he is not accountable. That is a precondition of punishment rather than a prescription for severity.
I am distressed, finally, by the district judge’s appearing to base the harsh sentence on the fact that the defendant “really had things going for” him, unlike so many ex-cons. The implication is that he is being punished extra-severely for being able to do, and doing, what so many former convicts, especially those who like him have served long prison sentences, are unable to do after being released — maintain an intact family and obtain decent employment (which of course go hand in hand). The sentence jeopardizes both of the defendant’s achievements. As a result of spending two more years in prison, he is likely to lose his job and opportunities for future gainful employment; he may lose his family.
The judge failed to articulate a rational basis for imposing an above-guidelines sentence. The sentence she imposed should be reversed.